**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TONYA ROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-CV-0018-CVE-SAJ |
| ) | |
| JASON PITTINGER, RUDY GARCIA, ) | |
| BRANDON MADDUX, and DOUGLAS ) | |
| NELSON, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is plaintiff's Motion to Vacate Opinion and Order (Dkt. # 6). In its January 18, 2006 Opinion and Order, the Court determined, sua sponte, that it lacked subject matter jurisdiction and dismissed plaintiff's claim without prejudice (Dkt. # 5). Plaintiff asks the Court to vacate its order of dismissal on the ground that the Court misunderstood her claim for relief. The Court construes plaintiff's motion as a motion for relief pursuant to Fed. R. Civ. P. 60(b).

The Court has substantial discretion in connection with a Rule 60(b) motion. Pelican Production Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990). However, relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances. Cashner v. Freedom Stores, Inc., 98 F.3d 572, 576 (10th Cir. 1996). While judicial mistakes are included within the scope of Rule 60(b)(1), the rule is not a substitute for direct appeal. Id. A judicial mistake, as construed by the Tenth Circuit for purposes of Rule 60(b), occurs where "the judge has made a substantive mistake of law or fact in the final judgment or order." Id. Plaintiff argues that the Court misunderstood the substantive law underlying her Complaint (Dkt. # 2).

This litigation stems from an injury sustained by plaintiff's son, Antonio, when he slipped while attempting to make a basket during high school varsity basketball practice. Plaintiff had given

her written consent for Antonio to play basketball on the freshman team at Union Public Schools ("UPS") during the 2004-05 school year. Dkt. # 2, at 2. According to plaintiff, Principal Pittinger called Antonio following a successful season and "told him Coach Garcia, the head varsity basketball coach, wanted him to be at the varsity team's practice that day after school." Id. Plaintiff alleges that defendants, as state actors, "instructed" her son to practice with varsity level basketball players without her permission, thus violating her right to control and manage her child.[1]

> Plaintiff only claims that she has the constitutional right to solely determine if, when, and where her child will play sports for any of the school district's teams. She claims further that whenever school officials take it upon themselves, as they allegedly did here, to encourage, instruct and direct children to play a school team sport without parental consent and permission, they have circumvented and violated the parents' constitutional right to manage and control their children.

Dkt. # 6, at 1-2. Plaintiff seeks to sue defendants under 42 U.S.C. § 1983 for violations of the substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution, invoking the parental rights doctrine.

"[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66 (2000). This right is commonly referred to as the Meyer-Pierce right because it finds its origin in two Supreme Court cases, Meyer v. Nebraska, 262 U.S. 390 (1923), and Pierce v. Society of Sisters, 268 U.S. 510 (1925). Plaintiff seeks to couch her claim within the parameters of the Meyer-Pierce right. However, as with all constitutional rights, the right of a parent to control the upbringing of their children is not without limitation. See,

---

[1] Plaintiff was not aware that defendants had asked Antonio to practice with the varsity team nor that Antonio accepted the invitation. Thus, this Opinion and Order does not address the issues presented if plaintiff had expressly prohibited Antonio's participation in varsity team practices.

e.g., Prince v. Massachusetts, 321 U.S. 158 (1944); C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 182 (3rd Cir. 2005) ("It is clear [] that the [Meyer-Pierce] right is neither absolute nor unqualified.") (citing Lehr v. Robertson, 463 U.S. 248, 256 (1983)); Fields v. Palmdale School District, 427 F.3d 1197, 1207 (9th Cir. 2005) (holding that the Meyer-Pierce doctrine does not extend "beyond the threshold of the school door."); Blau v. Fort Thomas Public School District, 401 F.3d 381, 395 (6th Cir. 2005) ("while this [Meyer-Pierce] right plainly extends to the public school setting, it is not an unqualified right."); Swanson By and Through Swanson v. Guthrie Independent School District No. I-L, 135 F.3d 694, 699 (10th Cir. 1998) ("Numerous cases [] have made it clear that this constitutional right is limited in scope.").

The Meyer-Pierce right is focused on the principle that the state does not have the right to interfere with parents' choice of "a specific educational program -- whether it be religious instruction at a private school or instruction in a foreign language." Fields, 427 F.3d at 1205 (quoting Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 533 (1st Cir. 1995)). In other words, Meyer and Pierce established a parental right to decide where to educate their children. See id. at 1207 ("[O]nce parents make the choice as to which school their children will attend, their fundamental right to control the education of their children is, at the least, substantially diminished."). This right applies to the educational process as a whole and not to separate components of the process, such as participation in extracurricular activities. The scope of the Meyer-Pierce right does not encompass plaintiff's claim as the state action at issue does not fall within the Meyer-Pierce proscription.

Plaintiff directs the Court's attention to Santosky v. Kramer, 455 U.S. 745 (1982), to support her claim. However, Santosky established that states cannot terminate parental custody without

3

clear and convincing evidence of neglect. Id. at 769.  First, plaintiff's custodial rights have not been challenged.  Second, child-rearing rights are distinct from custody rights.  Custody rights involve formal recognition as a child's principal child-rearer, while child-rearing rights involve an entitlement to make particular choices regarding a child's upbringing.  Plaintiff has failed to cite any case supporting her argument that she has a fundamental right to control and manage coaching decisions subsequent to giving her consent for her son to participate in the extracurricular sport.

The fundamental rights protected by the Fourteenth Amendment do not include a parent's right to control whether her child practices with the junior varsity or varsity team once parental permission for the extracurricular sport is given.  See C.N., 430 F.3d at 185 n.26 (holding that the "parental decisions alleged to have been usurped by the School Defendants are not of comparable gravity to those protected under existing Supreme Court precedent."); Fields, 427 F.3d at 1203-04 ("In fact, no such specific right can be found in the deep roots of the nation's history and tradition or implied in the concept of ordered liberty.").  Accordingly, the Court finds that the defendants' alleged interference with parental decision-making authority did not amount to a constitutional violation.  Since there was no substantive judicial mistake of law or fact, the Court's previous Opinion and Order stands in all respects.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Vacate Opinion and Order (Dkt. # 6) is **denied**.

**DATED** this 27th of February, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT